IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRINNELL CORPORATION, D/B/A TYCO FLOW CONTROL,<br><br>   Plaintiff/Counterclaim Defendant,<br><br>   v.<br><br>LEBRON & ASOCIADOS, INC., et al.,<br><br>   Defendants/Counterclaimant.<br>_____<br><br>GRINNELL CORPORATION, D/B/A TYCO FLOW CONTROL,<br><br>   Third Party Plaintiff,<br><br>   v.<br><br>ORION ENTERPRISES, INC., D/B/A FLO-SAFE,<br><br>   Third Party Defendant. | CIVIL NO. 08-2077(CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Grinnell Corporation, d/b/a Tyco Flow Control – Latin America Division (hereinafter "Tyco") filed this federal action against defendant, Lebrón & Asociados, Inc. (hereinafter "Lebrón") for non-payment and breach of contract after Tyco and Lebrón had entered into a contractual relationship wherein Tyco was to provide piping materials and

Grinnell Corp. et al., vs. Lebrón Asociados, Inc., et al
Civil No. 08-2077(CVR)
Opinion and Order
Page 2

related services to Lebrón for a brewery renovation project Lebrón was performing for Cervecería India at Mayagüez, Puerto Rico.[1]

Plaintiff Tyco filed this diversity action claiming from defendant Lebrón through its fault, actions or omissions, prevented Tyco from fulfilling the contracted shipment schedule and thus caused the breach of the contract the parties had entered to in June of 2005. Tyco further alleged Lebrón had refused to fully pay Tyco the contracted price alleging the materials were not received on the dates originally agreed for which plaintiff Tyco submits Lebrón owes at least two hundred forty thousand dollars ($240,000.00), plus interest. (Complaint, Docket No. 1).

Defendant Lebrón subsequently filed a counterclaim against plaintiff Tyco submitting that, upon reaching a contract between plaintiff Tyco and said defendant that was executed on June 9, 2005 for the amount of $314,019.28, Tyco was aware of a delivery schedule for all materials required for June and July 2005. Lebrón's counterclaim submits Tyco did not comply with providing piping materials in compliance with the provided plans and specifications nor the scheduled dates. Lebrón further claims the delays in the delivery of the materials caused in turn Lebrón to incur in delays and penalties were imposed by the owner of the Project, for which reason Lebrón has filed the counterclaim against Tyco including also damages upon sections of the pipe system never being delivered and others being fabricated incorrectly, causing additional delays, penalties and costs. The counterclaim claims plaintiff Tyco is responsible to Lebrón for the entire amount of eight

---

[1] Lebrón was contracted as the general contractor of the Cervecería India Modernization Project ("the project"). Within the scope of said project was the construction of a pipe rack, a water tank base, a concentrate building, a refrigeration building and a tank farm, water treatment building, the filtration building, and site work.

Grinnell Corp. et al., vs. Lebrón Asociados, Inc., et al
Civil No. 08-2077(CVR)
Opinion and Order
Page 3

hundred and five thousand dollars ($805,000.00) plus legal interest over the amount. (Counterclaim, Docket No. 20; Amended Counterclaim, Docket No. 27).

Thereafter, Tyco filed a "Motion to Dismiss Counterclaimed Amounts" discussing several items to be stricken. (Docket No. 134). Plaintiff Tyco submits as grounds for dismissal of some of the items of the counterclaim filed by Lebrón that as a matter of law Lebron's Amended Counterclaim should be dismissed as to the vast majority of the amounts claimed. Tyco's argument is premised in the contractual provisions that control between the parties, making reference as to the wording contained in the reverse side of the invoices from Tyco to Lebrón.[2] Tyco's request for dismissal addresses items listed as (c), (l) and (k), as well as to items listed as (a), (b), (d), (g), (h) and (j) on paragraph 25 of Lebrón's "Amended Counterclaim".

To this effect, Tyco avers the controlling provisions on the invoices state that Tyco would make effort to complete shipment as indicated, but it assumed no responsibility or liability for loss or damage due to delay or inability to ship, caused by acts of God, war, labor difficulties, accidents, delays of carriers, subcontractors or suppliers, inability to obtain materials, or any other causes of any kind whatever beyond the control of Seller. In addition, Tyco avers under said provisions it would not be liable for any loss, damage, cost of repairs, incidental or consequential damages of any kind, whether based upon warranty, contract or negligence, arising in connection with the sale, use or repair of the products.

---

[2] Notice is taken that portion of the amounts counterclaimed by Lebrón in this case have been dismissed altogether by Orders granting Motions to Strike re: economic damages (Docket Nos. 122, 125, 126 and 127) and Order denying Lebrón's Motion to Alter or Amend Judgment (Docket No. 132). Specifically, the amounts listed as items (a), (b), (d), (g), (h) and (j) of paragraph 25 of Lebrón's "Amended Counterclaim" filed May 31, 2009 (Docket No. 27).

In conclusion, Tyco requests dismissal of the counterclaim for above referenced terms would constitute exculpatory clauses under Puerto Rico law, which limit Tyco's responsibilities towards Lebrón.

Lebrón filed its opposition to the Motion to Dismiss and Tyco filed a response thereafter on June 17, 2011. (Docket Nos. 147 and 171).[3] Defendant and counter-claimant Lebrón submitted in the opposition that, contrary to Tyco's averment as to the alleged controlling provisions in the back of the invoices, by the time now Tyco claims to have notified Lebrón as to the alleged waiver on July 12, 2005, the contract between the parties already existed since June of 2005, for which a valid, firm and complete contract had already been negotiated between the parties and could not have amended by the "small print" in the back of the invoices that Tyco submits. In addition, Lebrón avers the claimed "controlling contractual provisions" were not present in all invoices: of the thirteen (13) invoices received by Lebrón, but said language was only contained in six (6) of them.[4]

**MOTION TO DISMISS STANDARD**

A defendant may move to dismiss an action against him, based solely on the complaint. In assessing this motion, we "accept all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar

---

[3] Third-party defendant Orion's Motion to Dismiss Third-Party Complaint (Docket No. 135; Response Nos. 147; 171 ) and Plaintiff Tyco's Amended Motion for Summary Judgment as to the Complaint filed against Lebrón regarding the amounts owed will be disposed in a separate Opinion and Order. (Docket No. 141, re: No. 136; Response Nos. 154; 172). Meanwhile, plaintiff Tyco's previous Motion for Summary Judgment (Docket No. 136; Response No. 149), is considered substituted by the Amended Motion for Summary Judgment for which it is to be considered moot.

[4] Tyco, on the other hand, submitted solely one of the invoices as a sample of what the language alleged to be controlling contained, without addressing whether it was indeed present in all the invoices sent to Lebrón. (Tyco's Exhibit 1).

Found., 993 F.2d 962, 971 (1st Cir. 1993). However, mere legal conclusions "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1950 (2009). The complaint must demonstrate "a plausible entitlement to relief" by alleging facts that directly or inferentially support each material element of some legal claim. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 559) (internal quotation marks omitted).

In ruling on a motion to dismiss, the Court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, without converting the motion into one for summary judgment. Clorox Co. PR v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000). Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), challenge under Federal Rule of Civil Procedure 12(b)(1) warrants differential fact finding. Thus, the plaintiffs' jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the existence or not of a factual disputes of genuine issues between the parties. *See* Valentín v. Hospital Bella Vista, 254 F.3d 358, 1st Cir. 2001); *citing* Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997).

## LEGAL ANALYSIS

Plaintiff and counter defendant Tyco attempts to dismiss the counterclaim filed by Lebrón upon submission of some alleged controlling provisions to the contract which were

contained in the back of the invoices as to the merchandise to be delivered for the project at Mayagüez, Cervecería India. Defendant and counter claimant Lebrón submits the alleged controlling provisions on the back of the invoices would not modify a contract already executed between the parties, conditions to which it had not agreed to and if considered to have modified the previous contract, as a contract of adhesion would not entitle Tyco for the summary disposition of the counterclaim. [5]

In the instant case, although plaintiff Tyco submitted the averments regarding the counterclaim in a motion to dismiss, it also included documentary evidence in support, besides the averment of the complaint, and furthermore, included deposition testimonies of witnesses to contradict counter claimant Lebrón's position. Similarly, Lebrón's opposition submitted several exhibits to sustain its averments, including a sworn statement as to the intention of the parties by Engineer Edgardo Lebrón Vagú when the contract was executed, as well as upon the invoices submitted by Tyco, to which Tyco replied with several exhibits, including letter of Mr. Lebrón Vagú dated September 1, 2005, to contradict Mr. Lebrón-Vagú's sworn statement.

At first glance it seems appropriate, upon the parties' determination to submit matters outside the pleadings, the motion to dismiss pending before this Court be considered as one for summary judgment. E.E.O.C. v. Green, 76 F.3d 19 (1st Cir. 1996). See Kurtis a. Kemper, J.D., *Necessity and Sufficiency of Notice of Court's Decision to Convert*

---

[5] The fact that a contract is one of adhesion does not render it per se unenforceable for adhesion does not imply nullity. If the contract is clear, its terms are binding on the parties. Once the court determines a material term in a contract is ambiguous, resolution of the ambiguity may require an assessment of extrinsic evidence of the parties' intent and thus becomes a question for the fact finder that precludes summary judgment.

Grinnell Corp. et al., vs. Lebrón Asociados, Inc., et al
Civil No. 08-2077(CVR)
Opinion and Order
Page 7

*Motion to Dismiss*, 143 ALR Fed. 455 (1998); Wright & Miller: *Fed. Prac. & Proc.* §1366, Conversion (2011).

Still, on second review, the parties' submissions fall short of complying with the Local Rules and the Federal Rules of Civil Procedure to be considered for summary judgment as they do not include contested and uncontested issues, make specific reference to the record, or the opposing party denied the former statement, leaving for the court to engage in what is to be considered anti-ferret conduct. As such, regardless of the documentation attached to the parties' respective memoranda, the Motion to Dismiss is addressed as such.

Plaintiff Tyco rests on the wording in the back of the invoices submitted, at least the six ones accepted by defendant and counter claimant Lebrón, to argue it is released from any liability for the events which are raised in the Counterclaim.

Under Puerto Rico law, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit 31, § 3471. Consequently, a court may not consider extrinsic evidence at all, if it finds that the terms of an agreement are clear. Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc., 96 F.3d 10, 15 (1st Cir.1996); Vulcan Tools of P.R. v. Makita U.S.A., Inc., 23 F.3d 564, 567 (1st Cir.1994). An agreement is clear when it can "be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." *See* Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir.1987) (internal citation omitted). *See* In re Advanced Cellular Systems, Inc., 483 F.3d 7 (1st Cir. 2007).

Defendant Lebrón submits the wording in these invoices was not only not object of any agreement between the parties, but the contract had already been entered into by the parties back in June of 2005 and could not be modified unilaterally by the time the invoices were first sent around September 2005.

The Amended Counterclaim filed by Lebrón and admitted to by Tyco refers to:

(1) Lebrón was the general contractor of Cervecería India's Modernization Project to provide construction of pipe rack, water tank base, a concentrate building, a refrigeration building and a tank farm, water treatment building, filtration building and site work. (Docket No. 27, Amended Counterclaim ¶1; Docket No. 28, Tyco's Answer ¶1).

(2) Lebrón contracted Tyco as supplier of the piping for, among others, the drainage system of the tank farm, refrigeration building, water tank base and the filtration building. (*Amended Counterclaim ¶3*). Tyco subcontracted the supplying of the piping for the drainage systems to Orion Fittings, Inc. (Tyco's Answer ¶3).

(3) Tyco was provided the plans, specifications and details of the piping it was contracted to supply. (Amended Counterclaim ¶5; Tyco's Answer ¶5).[6] The details included a list of all components necessary for the fabrication of the piping and fittings for the polypropylene drainage system. (Amended Counterclaim ¶6). Tyco's defense submits the details were erroneous at no fault of Tyco causing re-manufacturing of materials. (Tyco's Answer ¶6).

---

[6] Tyco claims Lebrón provided erroneous plans and specifications, which was discovered by Lebrón after shipment of materials was received and installation was attempted. (Tyco's Answer ¶5).

Grinnell Corp. et al., vs. Lebrón Asociados, Inc., et al
Civil No. 08-2077(CVR)
Opinion and Order
Page 9

(4) On June 9, 2005, Lebrón and Tyco agreed the contract amount was $314,019.28, and delivery schedule for all materials for June and July 2005. (Amended Counterclaim ¶8). Tyco denied the contractual obligation of particular or specific dates of deliveries but that it proposed to deliver in approximately three weeks and all other pipes in 6-8 weeks, without assuming late delivery fees or penalties. (Tyco's Answer ¶8).

(5) The first shipping containers were received on September 1, 2005. (Amended Counterclaim ¶9; Tyco's Answer ¶9).

(6) The materials received [from Tyco] did not include the main lines that interconnect the parts received so Lebrón could not work with the materials delivered. (Amended Counterclaim ¶10). Tyco admits the statement but attributes it to Lebrón's unwillingness or inability to provide signed manufacturer's submittal information prior to building the materials, a condition precedent to its fabrication. (Tyco's Answer ¶10).

(7) Some of the piping and fittings and fitting received from Tyco were made of homopolymer instead of the specified material, copolymer. (Amended Counterclaim ¶16). Tyco admits the statement but relies of the manufacturer's representation of fitness for the intended purpose and a fifteen (15) year warranty provided. (Tyco's Answer ¶16).

(8) When the owner of the project claimed about the variation of materials and specifications, Lebrón confronted Tyco and asked to send a qualified representative to identify the materials of homopolymer and those made of copolymer. (Amended Counterclaim ¶18). Tyco admits the averment except to clarify the manufacturer of the products was to the one who dealt with the change of materials. (Tyco's Answer ¶18).

The parties agreed that Lebrón finished the installation of the piping by February 2006. Lebrón claims it incurred in penalties for the delays it attributes to Tyco of one hundred and fifty (150) days. (Amended Counterclaim ¶24). Lebrón claims from Tyco amounts incurred for penalties, expenses, costs and charges related to penalties, back wages, overtime to compensate for the delays, overhead, double charges, double charges, freight charges, finance charges, returned materials credit, for a total of $805,000.00. The counterclaims submit these amounts resulted from Tyco's failure to comply its contractual obligations towards Lebrón and since Tyco failed to fulfill the mutual obligations it never placed Lebrón in a position to fulfill in turn the obligations being further responsible for the damages claimed in the counterclaim.

Puerto Rico eschews common law principles of contract interpretation in favor of its own civil code derived from Spanish law. See Guevara v. Dorsey Labs., Div. of Sandoz, Inc., 845 F.2d 364, 366 (1st Cir. 1988) ("The Supreme Court of Puerto Rico has made clear that the common law of the United States is not controlling when filling gaps in the civil law system."). Civil Code Article 1233 "determines the manner in which courts should interpret contracts under dispute as to the meaning of their terms." Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F.Supp. 98, 104 (D.P.R.1993), aff'd, 36 F.3d 1089 (1st Cir. 1994) (table).

Article 1233 provides:

If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.

If the words of a contract should appear contrary to the evident intention of the contracting parties, the intention of the parties shall prevail. 31 L.P.R.A. § 3471 (1991). "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation ....'" Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995) (quoting Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir. 1987)) (internal quotation marks omitted), *cert. denied,* 516 U.S. 861, 116 S.Ct. 171 (1995); *see also* Heirs of Ramírez v. Superior Court, 81 P.R.R. 347, 351 (1959). *See* Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo, Inc., 96 F.3d 10 (1st Cir. 1996).

Under Puerto Rico law, a contract has three elements: consent, a definite object, and consideration. *See* P.R. Laws Ann. tit. 31, §3391; *see also* Citibank Global Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 24 (1st Cir. 2009); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 1996 P.R. -Eng. 499244 (1996). Still, evidence of the parties intention is only proper when the terms of the contract are not clear. Caribbean Ins. Services, Inc. v. American Banks Life Assr. Co., 754 F.2d 2 (1st Cir. 1985). See P.R. Laws Ann. tit. 31, §3471.

Lebrón's Counterclaim submits the existence of a contract between Lebrón and Tyco. Tyco's Motion to Dismiss the Counterclaim relates to issues as to the intent of the parties and provisions which may be consonant with the fulfillment of conditions or breach thereof but which are subject to interpretation, as well as to the parties having entered into an agreement as to the dates of delivery as part of their contract. To grant the Motion to

Dismiss would entail the use of extrinsic evidence. Even a motion for summary judgment would not be warranted unless said undisputed extrinsic evidence of intent supports only one of the conflicting interpretations.

Regardless that Tyco attempts to establish dismissal of the Counterclaim on grounds of the controlling provisions, a contract interpretation is not undertaken from its literal sense but requires to investigate the intent of the parties, the spirit and purpose of the transaction, as inferred from the overall conduct of the interest parties and the concurring circumstances that may contribute to ascertain the will of the executing parties. If one clause of a contract admits to different meaning than others, it is to be understood in the sense most suitable to give it effect.[7] In construing a contract, we must give reasonable effect to all its terms whenever possible. United States v. Alegría 193 F.3d 179, 185-86 (1st Cir. 1999).

In disposing a request for dismissal, the court is to accept as true all well-pleaded facts set forth in a complaint, drawing all reasonable inferences in the pleader's favor. S.E.C. v. Tambone, 597 F.3d 246 (1st Cir. 2010). Lebrón has complied with the requirements to establish the basis for its amended counterclaim based on the pleadings, to which Tyco has acknowledged its existence, yet modified by the claimed controlling provisions in the back of the invoices submitted thereafter.[8] Hence, a complaint is sufficient if it contains

---

[7] *See* Puerto Rico Civil Code secs. 1237, 1236. 31 L.P.R.A. §3475 and 3474); Negrón Rivera v. Bonilla, *Ex parte*, 120 D.P.R. 61, 75 (1987) for a federal court siting on diversity must apply the substantive law of the forum state.

[8] Although interpretation of contracts is a matter of law for the courts, matters extrinsic such as the controlling provisions claimed by Tyco and the deposition testimonies submitted have raised ambiguity as to the applicable clauses and compromises of the parties which may not be gleaned from the face of the documents.

Case 3:08-cv-02077-CVR   Document 181   Filed 07/12/11   Page 13 of 13

Grinnell Corp. et al., vs. Lebrón Asociados, Inc., et al
Civil No. 08-2077(CVR)
Opinion and Order
Page 13

factual matter, which accepted as true, a claim from relief is plausible on its face. Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1939 (2009).

Thus, granting or disposing of the Amended Counterclaim as requested by Tyco's Motion to Dismiss is not warranted for there is a further need to weave through the various clauses, provisions and the intent of the parties to elucidate the nature of the contract between Lebrón and Tyco and whether there has been non-compliance with same as well as to their reciprocal claims to set-off their respective liabilities. It will also require to interpret if the contract allows the same to be amended by the mentioned invoices, as suggested by Tyco.

## CONCLUSION

In view of the foregoing, Tyco's "Motion to Dismiss Counterclaimed Amounts" as to the Amended Counterclaim is DENIED. (Docket No. 134).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of July of 2011.

                                        s/**CAMILLE L. VÉLEZ-RIVE**
                                        **CAMILLE L. VÉLEZ-RIVE**
                                        **UNITED STATES MAGISTRATE JUDGE**